IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KEVIN ELLIS, et al.,          §
                              §
                Plaintiffs,   §
                              §  Civil Action No. 3:03-CV-2416-D
VS.                           §
                              §
EDDIE CRAWFORD, et al.,        §
                              §
                Defendants.   §

MEMORANDUM OPINION
AND ORDER

This is a lawsuit by five Dallas Police Department ("DPD")
officers against five DPD supervisors, including one police union
official, alleging claims under 42 U.S.C. § 1983 for violations of
plaintiffs' First and Fourteenth Amendment rights and for
conspiracy to violate their civil rights.  Defendants move for
summary judgment, principally presenting the question whether
plaintiffs have introduced evidence that would permit a reasonable
jury to find that any of them suffered an adverse employment
action.  Concluding that they have not, and that there is no
genuine issue of material fact that otherwise precludes summary
judgment on a claim that has been properly pleaded, the court
grants defendants' motions and dismisses this case.

I

Because the court has already addressed this lawsuit in an
extensive memorandum opinion and order that sets out the background
facts and procedural history in some detail, *see Ellis v. Crawford*,
2005 WL 525406, at *1-*3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.)

("*Ellis I*"), and because the court assumes the parties' familiarity with that decision, it will not recount the background facts and procedural history at length.   In sum, plaintiffs Kevin Ellis ("Ellis"), Lee Bush ("Bush"), Tom Clayton ("Clayton"), Shawn Wash ("Wash"), and Steve Fuentes ("Fuentes") sue defendants Eddie Crawford ("Crawford"), Randy Hampton ("Hampton"), Roseanna Renaud ("Renaud"), June Kim Edwards ("Edwards"), and Scott Gerdes ("Gerdes"), alleging that they unlawfully retaliated against Bush after he obtained a promotion to the rank of Sergeant through the settlement of a race discrimination lawsuit against the City of Dallas and individuals within DPD.[1]   Plaintiffs aver that defendants retaliated against Ellis, Clayton, Wash, and Fuentes because they appeared to support Bush.   Bush was assigned to command the Interactive Community Policing ("ICP") Unit of DPD's Northwest Division.   The other four plaintiffs——Ellis, Clayton, Wash, and Fuentes——were also assigned to the ICP Unit and were under Bush's direct supervision.

In *Ellis I* the court considered defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), which presented the questions

---

[1]Plaintiffs originally sued three other defendants: Terrell Bolton ("Bolton"), Joe Gunn ("Gunn"), and Rick Andrews ("Andrews"). In an order issued under Fed. R. Civ. P. 4(m) the same day *Ellis I* was decided, the court directed plaintiffs to show cause why their actions against these defendants should not be dismissed for failure to effect service. *See Ellis I*, 2005 WL 525406, at *3 n.4. Plaintiffs did not meet their burden, and in a Rule 54(b) final judgment filed April 7, 2005, the court dismissed without prejudice plaintiffs' actions against Bolton, Gunn, and Andrews.

whether defendants were entitled to qualified immunity and whether plaintiffs had adequately stated a conspiracy claim under § 1985(2).  *See Ellis I*, 2005 WL 525406, at *1.  The court dismissed plaintiffs' § 1985(2) conspiracy claim against all defendants, *id.* at *28-*29, and it held that plaintiffs' complaint and Rule 7(a) reply were insufficient to overcome defendants' qualified immunity defense, *id.* at *29.  The court allowed plaintiffs to file an amended Rule 7(a) reply that addressed the pleading deficiencies.  *Id.*[2]

After plaintiffs filed their amended Rule 7(a) reply, Crawford filed a Rule 12 motion for judgment on the pleadings,[3] and all five defendants filed summary judgment motions.[4]  Plaintiffs oppose the summary judgment motions in a consolidated brief and evidence appendix.[5]

_____

[2]As explained *infra* at § IV(B), the court did not grant plaintiffs leave to amend their complaint or to assert new causes of action in their Rule 7(a) reply.

[3]In view of the court's decision granting Crawford's summary judgment motion, it need not address his August 22, 2005 Rule 12 motion for judgment on the pleadings.  The court denies the motion without prejudice as moot.

[4]Due to the unexpected and untimely death of plaintiffs' counsel, the court stayed consideration of these motions through September 13, 2006, when they again became ripe for decision. Plaintiffs' current counsel is not the attorney who filed the brief that is the subject of this memorandum opinion.

[5]Crawford filed on January 19, 2006 objections to, and a motion to strike, plaintiffs' summary judgment evidence.  Gerdes filed on January 31, 2006 a motion to strike plaintiffs' summary judgment response and evidence.  And Edwards filed on January 31,

II

Gerdes, Edwards, Hampton, and Crawford each move for summary judgment on the basis that plaintiffs cannot establish the essential elements of a prima facie case of First Amendment retaliation because, *inter alia*, they cannot demonstrate that they suffered an adverse employment action.[6]

A

To establish a First Amendment retaliation claim under § 1983, plaintiffs must show that they suffered an adverse employment action as a result of speech involving a matter of public concern; that their interest in commenting on the matter of public concern outweighed defendants' interest in promoting efficiency; and that the adverse action was motivated by the protected speech. *Ellis I*, 2005 WL 525406, at *4 (citing *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341 (5th Cir. 2003)). In *Ellis I* the court summarized the "adverse employment action" element of a retaliation claim:

_____

2006 a motion to strike plaintiffs' summary judgment response and evidence. Because in dismissing plaintiffs' claims the court is not relying on evidence to which defendants object, the court need not address the motions to strike, and it denies them without prejudice as moot.

[6]Renaud moves for summary judgment on the ground that plaintiffs' claims against her have been discharged in bankruptcy. Plaintiffs appear to recognize that their actions against Renaud are barred on this basis. *See* Ps. Br. 1 n.1 ("Note: Renaud's claims have been administratively dismissed so the Plaintiffs are not clear as to why she has sought a summary judgment."). In any event, plaintiffs have not presented any reason to avoid Renaud's bankruptcy discharge. The court therefore grants Renaud's motion for summary judgment.

> The Fifth Circuit takes a narrow view of what constitutes an adverse employment action. Included in the list of recognized adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands. The court has also recognized that, in some circumstances, transfers can constitute adverse employment actions. For the purposes of a § 1983 retaliation claim, an adverse employment action can include a transfer, because it may serve as a demotion. Transfers can constitute adverse employment actions if they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one. The court has suggested that disciplinary filings may also qualify under § 1983. The definition of adverse employment action under § 1983 may include reprimands and disciplinary filings. But it has declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech . . . . The reason for not expanding the list of adverse employment actions is to ensure that § 1983 does not enmesh federal courts in relatively trivial matters.

*Ellis I*, 2005 WL 525406, at *5 (citations, brackets, quotation marks, and some parenthetical case explanations omitted).

Because defendants will not have the burden of proof at trial on plaintiffs' First Amendment claims, they can meet their summary judgment obligation by pointing the court to the absence of evidence to support them. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once they do so, plaintiffs must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue

- 5 -

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is mandatory if plaintiffs fail to meet this burden. *Little*, 37 F.3d at 1076.  The failure of plaintiffs' proof as to any one essential element renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 323.

Defendants have discharged their initial burden of pointing to the absence of evidence that plaintiffs suffered an adverse employment action.  Defendants have pointed generally to the absence of evidence of an adverse employment action, and they have also identified (collectively) more than 20 alleged actions that they contend cannot qualify as adverse employment actions.

B

The court first decides whether plaintiffs have adequately identified the alleged adverse employment actions on which they rely to establish a prima facie case of First Amendment retaliation.

Under the rubric "Plaintiffs' First Amendment Claims," plaintiffs appear to rely on three types of adverse employment actions: they were (1) subjected to disciplinary filings as a result of factually baseless Internal Affairs Division ("IAD") investigations; (2) denied overtime pay; and (3) subjected to

retaliatory transfers.  Ps. Br. 27-28.[7]  Plaintiffs do not cite the summary judgment record or any other relevant parts of their brief that cite the evidence.  They instead appear to refer for "factual details" to unsworn allegations contained in ¶ 26 of their first Rule 7(a) reply, which is an unsworn pleading.  *See* Ps. Br. 28.[8] Plaintiffs leave the court to link their alleged adverse employment actions with their factual assertions and any attendant citations to evidence contained in their appendix.[9]

---

[7]Plaintiffs also state that their "[Rule 7(a)] Reply describes several retaliatory actions . . . that are classified as adverse employment actions that constitute actionable conduct."  Ps. Br. 29.  This general assertion, unsupported by any citation to plaintiffs' appendix, does not adequately apprise the court of the grounds for plaintiffs' claim and will not be considered.

[8]Plaintiffs' first and second Rule 7(a) replies are unsworn pleadings and are not competent summary judgment evidence.  *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (holding that unsworn pleadings do not constitute proper summary judgment evidence) (quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994)).

[9]Plaintiffs have followed a briefing method that this court has repeatedly criticized, including in a recent decision.  *See Wooten v. Federal Express Corp.*, 2007 WL 63609, at *3-*4 (N.D. Tex. Jan. 9) (Fitzwater, J.), *appeal docketed*, No. 07-10555 (5th Cir. May 18, 2007).  In their response brief, plaintiffs present 23 pages of allegations, entitled "Plaintiffs' Facts," *see* Ps. Br. 1-22, followed by approximately 13 pages of ostensible legal argument that is largely disconnected from the factual allegations, *see id.* at 22-34.  Consequently, the court must undertake the burdensome task of linking plaintiffs' legal arguments to their factual assertions and to any supporting evidence. As in *Wooten*, "[i]n the present case, the court has had to engage in considerable flipping back and forth between voluminous pages of . . . disputed facts and legal arguments to understand why the listed facts are substantively significant and to determine whether they support a party's assertion concerning the summary judgment record."  *Id.* at *4.  This deficiency is compounded in this case because, as the

This court is not obligated to comb the record in search of evidence that will permit plaintiffs to survive summary judgment. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). "Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 463 (5th Cir. 1996) (citing *Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir. 1996)). "Rule 56, therefore, saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones,* 82 F.3d at 1338. Moreover, under N.D. Tex. Civ. R. 56.5(c), "[a] party whose . . . response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence."

Despite the fact that the court is not obligated to comb the record for evidence to support plaintiffs' opposition, it has attempted to cross-reference the three alleged adverse employment actions that plaintiffs identify with their factual allegations and

---

court will explain throughout this opinion, plaintiffs have also failed to cite the summary judgment record with the specificity required under N.D. Tex. Civ. R. 56.5(c).

any supporting citations to their appendix.[10]   On that basis, the court has identified the foregoing three categories of alleged acts of retaliation as the predicates on which plaintiffs rely in their attempt to establish a prima facie case.   The court will address these three categories in deciding whether plaintiffs have presented evidence that would permit a reasonable jury to find that they were retaliated against, in violation of their First Amendment rights.

C

Plaintiffs' first ground for their First Amendment claim is that they were subjected to disciplinary filings triggered by factually baseless IAD investigations.

In the argument section of their brief, plaintiffs offer few relevant citations to their appendix or pertinent cross-references to the facts portion; the court is therefore left to comb through the record to locate evidence of the disciplinary filings to which plaintiffs refer.   Because the court is not required to do this, it has restricted its analysis to what is apparent from the limited review of the record warranted by the specificity of plaintiffs' briefing.   On this basis, the court assumes that plaintiffs are referring to allegations concerning three IAD investigations: the

---

[10]The court will not, however, search plaintiffs' statement of facts or appendix to identify *sua sponte* other potential adverse employment actions that may support a prima facie First Amendment retaliation claim.

Mobile Police Action Center ("MPAC") vehicle investigation, the Monique Alex ("Alex") sexual harassment investigation concerning Bush, and the workplace violence investigation instigated by Renaud against Ellis, Clayton, Wash, and Fuentes in May 2002.[11]   *See* Ps. Br. 14, 16, and 18.

Plaintiffs allege that Ellis, Fuentes, and Clayton were required in February 2003 to report to IAD to respond to an allegedly false claim initiated by Crawford, Renaud, Edwards, and Gerdes that plaintiffs were improperly using the MPAC vehicle to aid "in the performance of their after hours job."   Ps. Br. 16.[12] They contend there is no evidence that they ever used the vehicle during their off-duty jobs, and that placement of the vehicle was clearly justified because the area in question was a high crime area.   Plaintiffs also aver that in fall 2003, Renaud, Gerdes, and Edwards initiated an IAD investigation against Bush concerning

---

[11]The court assumes that plaintiffs are referring to IAD investigations initiated *against* plaintiffs rather than to an IAD investigation initiated *by* plaintiffs against Crawford.

[12]Plaintiffs cite, *inter alia*, a 131-page segment of their appendix in support of this allegation.   *See* Ps. Br. 17.   This is improper.   *See, e.g., Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *3 n.4. (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.) (holding that plaintiffs' citation to entire 137-page appendix was inadequate under Rule 56.5(c) because it dramatically increased burden on court to locate evidence on which summary judgment nonmovant relied) (citing *Hagen v. BeautiControl Cosmetics, Inc.*, 1999 WL 451228, at *4 n.2 (N.D. Tex. June 28, 1999) (Fitzwater, J.)).   But because the existence of the MPAC vehicle IAD investigation appears undisputed, this deficiency is not fatal to plaintiffs' opposition to defendants' motion.

allegations of sexual harassment or sexual misconduct against Alex, another police officer.  Alex asserted that she was not subjected to improper conduct, but that the investigation was undertaken for retaliatory reasons and was "very harmful to Bush."  Ps. Br. 18; Ps. App. 71.  Plaintiffs maintain that Bush was "permanently stigmatized" for being accused of sexual harassment and misconduct, even though Alex denied that Bush had engaged in any wrongdoing. Plaintiffs point to Bush's declaration, in which he avers that supervisors and administrators regard all referrals to IAD as an unfavorable mark against an officer's record, regardless of the outcome of the investigation.[13]  Ps. Br. 19-20 (citing Bush Decl., Ps. App. 1-29).[14]  They also contend that in May 2002, Renaud instituted an internal investigation against Ellis, Clayton, Wash, and Fuentes for workplace violence against Renaud.  *See* Ps. Br.

---

[13]Bush avers that he became eligible for promotion to the rank of Lieutenant after taking a civil service examination, and that he was "downgraded" because his resume contained a report of the sexual harassment investigations.  Ps. Br. 21.  But plaintiffs do not appear to assert that the fact that Bush was "downgraded"——assuming *arguendo* that he was——is itself an adverse employment action.  Moreover, plaintiffs do not point to evidence that would permit a reasonable jury to find that Bush's being "downgraded" as a result of the investigations caused him to be denied a promotion to Lieutenant.

[14]As they do elsewhere in their briefing, plaintiffs fail here to cite specific pages in their appendix, as required by Rule 56.5(c).  Instead, they cite all 29 pages of the Bush declaration, a large part of which does not support their response brief assertions.

14.[15]

Plaintiffs have failed to demonstrate that they are entitled to a trial of this ground of their retaliation claim. Their claim that they were subjected to disciplinary filings based on factually baseless IAD investigations is somewhat misleading and, in any event, is not supported by evidence. Plaintiffs do not identify any summary judgment evidence that could reasonably be construed as a disciplinary filing that *resulted from* the MPAC vehicle investigation, the Alex sexual harassment IAD investigation, or the Renaud workplace violence investigation. The disciplinary filings to which plaintiffs refer appear to be nothing more than the IAD complaints themselves (i.e., the complaints that initiated the MPAC vehicle investigation, the sexual harassment investigation, and the workplace violence investigation), not independent, adverse consequences of the investigations. *See* Ps. Br. 17-18 ("IAD took the fraudulent disciplinary filings from Lt. Gerdes, Chief Edwards and Hampton."). Their own pleadings establish that Ellis, Fuentes, and Clayton were cleared of any wrongdoing and were never disciplined for their deployment of the MPAC vehicle. And there is

_____

[15]Plaintiffs fail here as well to cite specific pages in their appendix, as required by Rule 56.5(c). Instead, they cite 37 appendix pages spanning the declarations of Wash, Fuentes, Ellis, and Clayton. The majority of the cited text does not even relate tangentially to the Renaud workplace violence investigation. Additionally, it is unclear whether the workplace violence investigation was an IAD investigation or some other "internal investigation." The court will nevertheless consider it in deciding defendants' summary judgment motions.

no indication of a filing stemming from the sexual harassment investigation against Bush.  Furthermore, plaintiffs have neither pointed to nor adduced any evidence that the internal investigation for workplace violence that Renaud instituted resulted in any disciplinary filings or other adverse employment action.[16]

Moreover, many of the foregoing allegations do not rise to the level of constitutional injury and thus are insufficient as a matter of law.  As the court noted in *Ellis I*, "[s]everal acts that would be unpleasant if suffered by an employee are not adverse employment actions."  *Ellis I*, 2005 WL 525406, at *8 (citations omitted).  "An investigation by itself does not constitute an adverse employment action."  *Id*. at *15.  Plaintiffs have neither pleaded facts nor adequately pointed the court to evidence that they actually suffered negative or adverse consequence related to their employment as a result of the IAD investigations into the MPAC vehicle incident or the Alex matter, or stemming from the Renaud workplace violence internal investigation.  Although the court acknowledges that an investigation that actually results, for example, in denial of a promotion can sometimes constitute an adverse employment action, *see id*. at *16 (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)), plaintiffs do not

---

[16]Even after reviewing the 37 pages of improperly-cited appendix testimony, the court is unable to locate any evidence of a disciplinary filing or other adverse employment action that occurred as a result of the Renaud workplace violence investigation.

point to evidence that would permit a reasonable jury to find that Bush was denied a promotion as a result of an IAD investigation. An IAD investigation, without more, does not amount to an adverse employment action. *See id.* at *15.

Plaintiffs repeatedly emphasize that they were subjected to permanent stigmatization as a result of the investigations. *E.g.* P. Resp. 19-20, 30. But as the court noted in *Ellis I*, the Fifth Circuit has held that "false accusations, criticism, and investigations are not adverse employment actions," and "[e]ven the capacity of an action to stigmatize an employee is inadequate to make it" an adverse employment action. *Ellis I*, 2005 WL 525406, at *8 (citing *Breaux*, 205 F.3d at 157-58 n.14 ("Stigma by itself, without an impact on one's employment, does not constitute adverse employment action.")). To qualify as an adverse employment action that will support a First Amendment retaliation claim, the act taken must alter an important condition of employment, result in the denial of an employment benefit, or have a negative consequence on the plaintiff's employment. *Breaux*, 205 F.3d at 159 & n.16 ("Some benefit must be denied or some negative consequence must impinge on the Plaintiff's employment before a threat of discharge is actionable."); *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992) (recognizing that, in *Bickel v. Burkhart*, 632 F.2d 1251 (5th Cir. 1980), the Fifth Circuit "held that an employee could establish a deprivation by showing that his employer altered an

important condition of employment." (internal quotation marks omitted)).

The court therefore concludes that plaintiffs have failed to adduce evidence that would permit a reasonable jury to find that they suffered an adverse employment action by being subjected to disciplinary filings triggered by IAD and internal investigations that allegedly were factually baseless.

D

Plaintiffs' second ground for relief is that they were denied overtime. They assert that "Ellis and Wash were denied the opportunity to work overtime by Defendant Renaud," "Renaud informed Bush that he was no longer permitted to attend community meetings that would result in receiving compensatory time or overtime," and "other Plaintiffs were similarly advised that they would no longer be permitted to work overtime or gain compensatory time." Ps. Br. 13 (citing Ps. App. 90-99, 107-121, and 1-131).[17]

According to plaintiffs, defendants' refusal to permit them to receive overtime benefits was instituted by Renaud, approved by Edwards, and maintained by the actions of the other defendants. Plaintiffs posit that, at the time, every other ICP Unit and ICP Sergeant in the city was being offered and was receiving overtime pay or compensatory time, and each plaintiff was denied overtime

---

[17]Elsewhere in plaintiffs' brief, they reiterate the overtime allegations, citing generally to the majority of their appendix. *See* Ps. Br. 18-19 (citing Ps. App. 1-131).

pay for each year since 2002. Bush asserts that he worked 2.5 hours of overtime on March 7, 2002, but that Renaud and Edwards would not approve the payment of benefits to him.

The court concludes that a reasonable jury could not find that the alleged denial of overtime to plaintiffs is an adverse employment action. As before, the court holds that plaintiffs cannot meet their summary judgment burden based on general citations to large segments, including a 131-page grouping, of their summary judgment appendix, in violation of Rule 56.5(c). *See, e.g., Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *3 n.4 (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.). Plaintiffs have thus failed adequately to point the court to *evidence* that supports their allegations. The court is not obligated to comb the voluminous cited pages of plaintiffs' appendix in an attempt to locate proof that would enable them to defeat summary judgment on this issue. *See, e.g., Adams*, 465 F.3d at 164.

In addition to their failure to cite the summary judgment evidence adequately, plaintiffs' action fails for the reasons set out in *Ellis I*, 2005 WL 525406, at *7-*9. In *Ellis I* the court concluded that

> in some circumstances, denial of the opportunity to earn overtime can qualify as an adverse employment action that will support a First Amendment retaliation claim. As noted above, discharges, demotions, refusals to hire, refusals to promote, and reprimands are recognized adverse employment actions. Although panels in this circuit often cite

- 16 -

> this list when discussing what an adverse
> employment action is, the court has not held
> this list to be exclusive.  Accordingly, the
> fact that a denial of overtime does not appear
> in this list is not dispositive.

*Id.* at *8 (citations and quotation marks omitted).  The court held in the context of assessing defendants' qualified immunity defense that plaintiffs had failed to allege facts sufficient to enable the court to determine that the alleged denial of overtime was "sufficiently serious to constitute a constitutional injury." *Id.* at *9 (citations and quotation marks omitted).  The court held that plaintiffs' pleadings lacked any facts that showed that an alleged denial was significant enough that it could be considered analogous to the actions that the Fifth Circuit recognized as an example of adverse employment action, as opposed to something more trivial. *Id.*  Absent such detail, the court was unable in *Ellis I* to determine whether plaintiffs had pleaded a First Amendment violation.  *Id.*

Plaintiffs have not adduced evidence that would enable a reasonable jury to find that the alleged denial of overtime benefits constituted an adverse employment action, because they have not produced proof that would permit the finding that the loss of overtime compensation was significant enough to be considered analogous to the actions that the Fifth Circuit has recognized as examples of adverse employment actions, as opposed to something more trivial.

The court therefore holds that plaintiffs cannot base their First Amendment retaliation claims on the alleged denial of overtime benefits.

E

Plaintiffs assert as the third ground for their First Amendment claims that some of them were subjected to retaliatory transfers. They fail here as before to cite their appendix or to cross-reference the fact portion of their brief. Based on what is apparent from a limited review of the record, as opposed to combing the appendix for evidence, the court assumes that plaintiffs are referring to the alleged retaliatory transfer of Wash to Love Field Airport ("Love Field") on or around October 7, 2001, which plaintiffs' specifically allege "constituted a demotion." *See* Ps. Br. 9 (citing Ps. App. 90-99).[18]

For reasons set out in *Ellis I*, the court holds that plaintiffs have not adduced evidence that would permit a reasonable

---

[18]Plaintiffs also allege that on July 24, 2002, Wash was transferred from the ICP Unit to the First Watch Patrol, and that this position was less desirable than the ICP position. The court rejected these allegations in *Ellis I*, 2005 WL 525406, at *18, and the cited evidence (the Wash declaration) on which plaintiffs' now rely does not support a different result. Plaintiffs also allege that Wash was transferred because of retaliation and/or discrimination, once in October 2001 and again in January 2002. But even assuming that one or both of these transfers are distinct from the ones the court addresses in this opinion, they fail for the same reasons.

jury to find that Wash's transfer to Love Field,[19] or his transfer back to the ICP Unit and resulting shift change,[20] constitutes an adverse employment action.  *See Ellis I*, 2005 WL 525406, at *17-*18.

The court recognizes that a transfer that is equivalent to a demotion can sometimes amount to an adverse employment action.  *Id*. Plaintiffs maintain that Wash's transfer to Love Field was a demotion because he was placed in a much less desirable job than the one provided to ICP officers.  But they have failed to introduce evidence that would permit a reasonable jury to find that Wash's transfer to Love Field was equivalent to a demotion.  The only proof they cite in support of this contention is Wash's and Bush's declarations.  Wash's declaration provides no support for the conclusory assertion that the transfer to Love Field was a

_____

[19]Plaintiffs also allege that Edwards and Gunn transferred Wash to another unit with less desirable job conditions.  Although this claim appears to be distinct from the Love Field transfer, the court will not comb the cited 131-page portion of the appendix to attempt to find evidence to support this claim.  *See, e.g., Adams*, 465 F.3d at 164.  The court holds that plaintiffs have failed to establish that this transfer constitutes an adverse employment action.

[20]Plaintiffs do not appear to plead Wash's post-transfer shift change as an adverse employment action.  *See* Ps. Br. 9 ("Wash's transfer to Love Field constituted a demotion . . . . ").  But to the extent plaintiffs are relying on the shift change, the court rejects this contention because a mere change in an employee's work hours is alone insufficient to constitute an adverse employment action.  *Ellis I*, 2005 WL 525406, at *17 (citing *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)); *see also id*. at *9 (In *Benningfield* the court rejected an argument that a transfer to the night shift was an adverse employment action.").

demotion.  *See* Ps. App. 90-99 (containing no evidence from which a reasonable jury could find that transfer to Love Field constituted a demotion).[21]  The Bush declaration contains only the conclusory assertion that the "transfers were made to much less prestigious and desirable positions than [the ICP Unit]."  Ps. App. 27.  This is insufficient to avoid summary judgment.  *See, e.g., Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) ("[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts . . .' are insufficient to either support or defeat a motion for summary judgment.")(citations omitted).  Plaintiffs have thus failed to adduce evidence that would permit a reasonable jury to find that Wash suffered any adverse employment action as a result of the transfers.

G

The court holds that plaintiffs have failed to present a genuine issue of material fact concerning whether they were subjected to at least one adverse employment action.  Because they cannot establish an essential element of a prima facie case for First Amendment retaliation, they cannot recover on their claims

---

[21]Wash's transfer to Love Field is principally discussed on one page and in one paragraph of the ten pages that plaintiffs cite.  *See* Ps. App. 93.  In that paragraph, plaintiffs cite no evidence that would permit a reasonable jury to find that the transfer to Love Field was equivalent to a demotion.  *See id*.

under the First Amendment.[22]

### III

Plaintiffs also allege claims under § 1983 for race discrimination, in violation of the Fourteenth Amendment Equal Protection Clause.[23]

### A

Defendants contend they are entitled to summary judgment because, *inter alia*, plaintiffs cannot establish that they suffered an adverse employment action. As in *Ellis I*, the court applies "the same definition of adverse employment action to plaintiffs' § 1983 race discrimination and First Amendment retaliation claims." *Ellis I*, 2005 WL 525406, at *28.[24]

---

[22]Defendants also contend that plaintiffs' speech did not involve a matter of public concern; that there is no evidence of retaliatory motivation; and there is no evidence that others similarly situated were treated favorably. Considering the basis for the court's decision, it need not address these contentions. For the same reason, the court need not address defendants' motions to strike plaintiffs' evidence. *See supra* note 5.

[23]Ellis and Clayton are Caucasian, Wash and Bush are African-American, and Fuentes is of Hispanic heritage. *Ellis I*, 2005 WL 525406, at *1.

[24]To prevail on a § 1983 claim for race discrimination, a plaintiff must offer either sufficient direct evidence of discriminatory animus, or circumstantial evidence that gives rise to a presumption of discrimination. Plaintiffs make the conclusory contention that they have direct evidence of discrimination. "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3. (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). The court need not decide whether plaintiffs' case turns on direct or

B

The court notes at the outset that the part of plaintiffs'
brief that addresses this aspect of defendants' summary judgment
motion is no better than the part the court has already found
deficient, and for the same reasons.  That is, plaintiffs fail in
the argument section to cite their appendix or to refer to the
facts portion of the brief.  When plaintiffs do cite their
appendix, the citations are in most instances improperly made to a
131-page segment of the appendix, in violation of Rule 56.5(c).[25]
*See* Ps. Br. 26 and 27.  As the court has noted, it is not obligated
to comb the record in search of evidence that would support
plaintiffs' case.  *See, e.g., Adams*, 465 F.3d at 164.  Nor is it
required *sua sponte* to raise substantive legal arguments that would
support plaintiffs' position.  Based on what is apparent from the
review of the record warranted by plaintiffs' briefing, it appears
that plaintiffs identify five acts as adverse employment actions
for purposes of their § 1983 race-discrimination claims.
Specifically, they posit that Bush and other plaintiffs were

> forced to endure transfers to less desirable
> positions, [subjected to] unfounded
> investigations into non-existent misconduct,
> unjustified blackened employment records,
> downgraded employment reviews, and denial of

---

circumstantial evidence because, under either approach, the absence
of evidence of an adverse employment action is dispositive.

[25]At one point, plaintiffs cite to fewer than all 131 pages.
*See* Ps. Br. 25 (citing Ps. App. 122-25).

- 22 -

overtime benefits.

Ps. Br. 26.   Plaintiffs cite 131 pages of their appendix as evidentiary support for these five allegations.   For reasons already explained, this is insufficient to discharge their burden as the summary judgment nonmovants.

Moreover, even accepting *arguendo* that these alleged adverse employment actions are supported by evidence, for the reasons described here and in *Ellis I*, a reasonable jury could not find that they constitute adverse employment actions.   The court has already rejected plaintiffs' attempt to rely on allegations concerning their denial of overtime benefits, Wash's transfers, and plaintiffs' alleged subjection to IAD and internal investigations. This leaves the following for consideration: whether plaintiffs have introduced evidence that would permit a reasonable jury to find that any other forced transfer (other than Wash's) constitutes an adverse employment action; and whether "unjustified blackened employment records" or "downgraded employment reviews" constitute adverse employment actions.

Plaintiffs allege that Gerdes placed false and adverse comments in Bush's 2002 annual performance evaluation, and that as a result of these comments, Bush was "denied an opportunity for advancement."   Ps. Br. 16 (citing Ps. App. 1-29).   The court rejected similar allegations in *Ellis I*, 2005 WL 525406, at *11-*12, holding that plaintiffs had failed to allege that Bush

- 23 -

suffered the alteration of an important condition of employment as a consequence of the downgrading. Plaintiffs improperly cite the entire 29 pages of Bush's declaration, the bulk of which is not relevant to the court's resolution of this issue. And even after reviewing the Bush declaration, the court holds that the cited evidence is insufficient as a matter of law. Although plaintiffs may have remedied their *pleading* deficiency by asserting that Bush was denied the opportunity for advancement, they have failed to adduce *evidence* that would permit a reasonable jury to find that Bush suffered an adverse employment action.

Other than Wash's transfers, which the court has addressed above, the court has been unable to locate (and plaintiffs have not identified) any factual allegations or evidence in plaintiffs' summary judgment response concerning other forced transfers. Similarly, the court has been unable to find (and plaintiffs have not pointed to) any factual allegations or evidence supporting their claim regarding "blackened employment records." To the extent plaintiffs are referring to Bush's downgrading, the court has already addressed and rejected this claim above. And insofar as plaintiffs are referring to their being stigmatized as a result of the IAD or other internal investigations, the court has addressed and rejected such a claim in this decision and in *Ellis I*, 2005 WL 525406, at *15 (holding that investigations that did not result in any action are not actionable) (citing *Pierce v. Tex.*

- 24 -

*Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994)).

The court will not comb the record or attempt to draw inferences from the factual allegations in plaintiffs' response briefing in search of other acts of discrimination that might rise to the level of constitutional injury. Accordingly, the court holds that plaintiffs have failed to raise a genuine issue of material fact as to whether they suffered an adverse employment action that can serve as the basis for a claim of race discrimination, in violation of the Fourteenth Amendment.

C

Plaintiffs also contend that the evidence demonstrates that they were subjected to a racially hostile work environment. They have not pleaded such a claim,[26] however, and they cannot raise it for the first time in their summary judgment response. *See, e.g., Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

But assuming *arguendo* that plaintiffs have preserved a hostile

---

[26]In *Ellis I* the court noted that because plaintiffs "do not include [a hostile work environment claim] in either [their complaint or Rule 7(a) reply], the court will not address it." *Ellis I*, 2005 WL 525406, at *29 n.31.

work environment claim, they have failed adequately to cite any summary judgment evidence that would permit a reasonable jury to find in their favor.  Plaintiffs allege, *inter alia*, in conclusory fashion that "the evidence describes the hostile racial environment created by Crawford" and the other defendants, but they do not cite specific pages of their appendix in support of these allegations.  Rather, at the conclusion of a paragraph containing these general allegations, they again cite a 131-page segment of their appendix, in violation of Rule 56.5(c).[27]

In their only allegation supported by properly cited evidence, plaintiffs maintain that the evidence shows that Crawford made it clear that he "objected" to Bush and promised to use his influence over the other defendants to "take actions against Bush."  Ps. Br. 25.   They cite Clayton's declaration, which largely contains conclusory allegations that Crawford "is a racist," and "has a problem with minorities."  *Id*.  Clayton also alleges, *inter alia*, that Crawford told him he did not like Bush because he is African-American and that Crawford made derogatory statements to Clayton about minorities.  *Id.* (citing Ps. App. 123).  In sum, Clayton's

---

[27]Where the plaintiffs *do* cite specific pages of the appendix, the purpose for which the evidence is being offered is unclear.  In other words, plaintiffs' briefing renders it nearly impossible to tell whether the evidence cited is being offered to support their putative hostile work environment claim or some other, unspecified race-based discrimination claim.  Plaintiffs' brief asserts that their pleadings "allege criteria establishing a race claim *or* a hostile work environment."  Ps. Br. 24 (emphasis added).

cited assertions are too generalized and conclusory to permit a reasonable jury to find that they amount to the kind of "severe and pervasive" race-based harassment that would be sufficient to support a hostile work environment claim. *See, e.g., Wooten v. Federal Express Corp.*, 2007 WL 63609, at *19-*20 (N.D. Tex. Jan. 9) (Fitzwater, J.) (summarizing elements of prima facie case of hostile work environment), *appeal docketed*, No. 07-10555 (5th Cir. May 18, 2007).[28]

The court therefore grants summary judgment dismissing plaintiffs' Fourteenth Amendment-based race discrimination claims.

IV

A

Defendants move for summary judgment on plaintiffs' conspiracy claim brought under § 1983. Plaintiffs have not addressed or otherwise specifically responded to defendants' summary judgment motion related to their § 1983 conspiracy claim.[29] Although plaintiffs' failure to respond does not permit the court to enter a "default" summary judgment in favor of defendants, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113,

---

[28]Moreover, the court will not comb the Clayton declaration in an attempt to discern some other theory of race discrimination that plaintiffs do not specifically identify.

[29]Plaintiffs appear to include in their summary judgment response allegations relating to conspiracy, but they rely solely on § 1985(3)——a claim that, by their own admission, plaintiffs did not intend to plead and that the court addresses and rejects *infra* at § IV(B).

1117 (N.D. Tex. 1990) (Fitzwater, J.), plaintiffs have failed to adduce evidence that would permit a reasonable jury to find in their favor.  Because defendants have pointed to the absence of evidence to support plaintiffs' claim, plaintiffs are obligated to produce evidence that creates a genuine issue of material fact.  "A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence."  *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  Because plaintiffs are relegated to their unsworn pleadings, which are not summary judgment evidence, they have failed to adduce proof that is sufficient to create a genuine issue of material fact in support of their § 1983-based conspiracy claim.

B

In opposition to defendants' motion, plaintiffs attempt to rely on a § 1985(3)-based conspiracy claim.  They cannot defeat summary judgment on this basis, however, because, by their own admission, they did not intend at an earlier point in this case to plead a § 1985(3) claim, and the court never granted them leave to amend for the purpose of alleging such a claim.

Plaintiffs acknowledged in response to defendants' motions to dismiss that they did not intend to assert a claim under § 1985(3).  *See* Ps. Aug. 18, 2004 Resp. to Ds. Mot. Dismiss 6 ("Note the

plaintiffs' complaint and Rule 7a Reply *incorrectly* reference § 1985(3), it should be § 1985(2)." (emphasis added)).  And the fact that plaintiffs were not alleging such a claim at the time defendants moved for summary judgment is corroborated by the fact that defendants did not attempt to address the claim in their motion.[30]  Plaintiffs cannot rely on a claim that is only raised in response to defendants' motion for summary judgment, has not pleaded in the complaint, and, as explained below, is not properly asserted in plaintiffs' Rule 7a reply.  *See Cutrera*, 429 F.3d at 113.

The court has not granted plaintiffs leave to amend to assert a § 1985(3)-based conspiracy claim.  In *Ellis I* the court recognized that "[a]lthough plaintiffs' pleadings appear to invoke language from § 1985(2) and (3), in their response to defendants' motion to dismiss, they state that their pleadings *incorrectly* refer to § 1985(3) and should cite § 1985(2)." *Ellis I*, 2005 WL 525406, at *28 n.29 (emphasis added).  The court afforded plaintiffs an opportunity to amend their Rule 7(a) reply for the purpose of addressing certain deficiencies identified in the court's opinion.  It did not do so to enable plaintiffs to amend their complaint to state a § 1985(3) claim that they explicitly told the court they did not intend to plead.  To the extent

---

[30]Similarly, Crawford did not move for judgment on the pleadings with respect to a § 1985(3)-based conspiracy claim.

plaintiffs now attempt to allege a § 1985(3)-based conspiracy claim in their amended Rule 7(a) reply, *see* Ps. Apr. 2005 Rule 7(a) Reply 33-34, and to rely on this claim to defeat summary judgment, this is improper.

"[I]n this circuit, a district court may require a plaintiff to respond to a public official's assertion of a qualified immunity defense by way of a Rule 7(a) reply." *Ellis I*, 2005 WL 525406, at *4 n.6 (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). "The *Schultea* rule governing the Rule 7(a) reply is an instantiation of the more general principle that 'heightened pleading' is needed in qualified immunity cases." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (citing *Schultea*, 47 F.3d at 1430). "[T]he [Rule 7(a)] reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea*, 47 F.3d at 1433.  It is a means for plaintiffs to "'support[ ] [their] claim[s] with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant[s'] conduct at the time of the alleged acts.'" *Reyes*, 168 F.3d at 161 (quoting *Schultea*, 47 F.3d at 1434).  The Rule 7(a) reply is not a proper vehicle for plaintiffs to raise a new cause of action that they have not been granted leave to add through an amended complaint.

The court therefore holds that plaintiffs have not properly preserved a § 1985(3)-based conspiracy claim and cannot now rely on

it to defeat summary judgment.

V

Gerdes and Hampton also include in their summary judgment motions subsidiary arguments seeking dismissal on the basis of their defense of qualified immunity.[31]

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id.* at n. 30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Plaintiffs have not met their burden of overcoming defendants' qualified immunity defense. Because the court has granted summary judgment dismissing plaintiffs' First Amendment retaliation and

---

[31]These defendants focused their summary judgment motions on the merits of plaintiffs' claims rather than on qualified immunity as a threshold basis for relief. The court has thus reached qualified immunity at this stage of its decision rather than at an earlier, preliminary point.

Fourteenth Amendment race-based discrimination claims, defendants are entitled to qualified immunity as well.  In the absence of evidence that would permit a reasonable jury to find that defendants committed a constitutional violation, defendants are entitled *a fortiori* to qualified immunity.

*     *     *

Accordingly, for the reasons set out, the court grants Crawford's November 15, 2005 motion for summary judgment, Hampton's November 15, 2005 motion for summary judgment, Renaud's November 15, 2005 motion for summary judgment, Gerdes's November 15, 2005 motion for summary judgment, and Edwards's November 16, 2005 motion for summary judgment, and it dismisses this action with prejudice by judgment filed today.

**SO ORDERED.**

June 6, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 32 -